### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

DAVID ANGEL SIFUENTES III,    Case No.
Plaintiff,

Hon.

V.

CITIBANK, N.A.,
Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, David Angel Sifuentes III ("Plaintiff"), appearing Pro Se, brings this action against Defendant Citibank, N.A. ("Defendant" or "Citibank"), seeking monetary damages and equitable relief arising from Defendant's systemic and egregious failure to adequately secure and safeguard Plaintiff's highly sensitive personal and financial information, coupled with its fraudulent concealment of a severe data breach and its subsequent deceptive and unlawful business practices leading to ongoing financial harm.

## I. NATURE OF THE ACTION

1. This is a civil action seeking monetary damages and equitable relief arising from Defendant's systemic and egregious failure to adequately secure and safeguard Plaintiff's highly sensitive personal and financial information, coupled with its fraudulent concealment of a severe data breach and its subsequent deceptive and unlawful business practices leading to ongoing financial harm.

2. This compromised information includes, but is not limited to, Plaintiff's full name, residential address, Social Security number, date of birth, credit account usernames, and critically, his Citibank account passwords, email addresses associated with the accounts, and payment information including credit card numbers and/or bank account details (collectively, "Personal Information").

1

3. Account passwords are fundamental to online security, are considered private and protected personal identifying information under law, and serve as the primary keys to accessing a wealth of confidential online data.

4. Defendant's egregious misconduct and deficient security practices resulted in a severe data breach that occurred on or around January 11, 2021 (the "Data Breach"), which compromised Plaintiff's Personal Information, including his account password.

5. Compounding its initial failures, Defendant failed to provide any notification of this Data Breach to Plaintiff, thereby engaging in fraudulent concealment and depriving Plaintiff of the ability to take timely protective measures for over four years.

6. Plaintiff first discovered the Data Breach and the compromise of his Personal Information—including evidence of unauthorized access to his Citibank accounts facilitated by the stolen password—on or around May 20, 2025, through a notification received on his iPad application informing him of data breaches.

7. As a direct and proximate result of Defendant's wrongful actions, omissions, and breaches of duty, Plaintiff has suffered, and continues to suffer, identity theft, unauthorized access to his financial and email accounts, invasion of privacy, emotional distress, financial losses, and faces a significant, ongoing, and imminent risk of future harm.

8. Even if the compromised Personal Information has not yet been used for overt fraud, its unauthorized acquisition and retention by bad actors constitutes a present injury to Plaintiff, creating an immediate and increased risk of identity theft and financial harm, for which damages are appropriate. The taking of this information without a permissible purpose is a violation in itself.

9. Plaintiff is no longer an active customer of Defendant's Citibank services, but his sensitive Personal Information, which Defendant continues to retain, remains on Defendant's systems, heightening the need for redress and assurance of data security.

10. Plaintiff is entitled to equitable tolling of any applicable statutes of limitations due to Defendant's active and fraudulent concealment of the Data Breach and Plaintiff's diligent pursuit of his claims upon discovery.

11. Furthermore, Defendant's deceptive and unlawful practices, particularly its failure to

inform Plaintiff of his account being compromised, directly led to ongoing financial vulnerabilities. These deceptive practices highlight a pattern of negligence, a breach of trust, and violations of consumer protection statutes.

12. The injury to Plaintiff is ongoing, compelling him to continuously expend time and resources protecting his accounts. This includes, but is not limited to, obtaining and installing antivirus software for his computer and mobile devices, constantly monitoring his financial and online accounts, and undertaking other significant mitigation efforts to counteract the persistent threat of identity theft and fraud initiated by Defendant's failures.

13. Plaintiff brings claims for: Identity Theft; Bailment; Violation of the Michigan Consumer Protection Act; Violation of the New York General Business Law; Invasion of Privacy; Negligent Infliction of Emotional Distress; Intentional Infliction of Emotional Distress; Violation of the Fair Credit Reporting Act (FCRA); Violation of the Computer Fraud and Abuse Act (CFAA); Fraud; Trespass to Chattels; Breach of Implied Contract; Breach of Express Contract; Violation of the Truth in Billing Act (or analogous state and federal consumer protection statutes); and violation of Plaintiff's procedural due process rights.

14. Plaintiff seeks actual damages, punitive damages, and any other relief this Court deems just and proper.

## II. THE PARTIES

15. Plaintiff David Angel Sifuentes III is an individual citizen of the United States and a resident of Grand Rapids, Kent County, Michigan, residing at 439 More St. NE, Unit 2, Grand Rapids, MI 49503. Plaintiff is proceeding Pro Se.

16. Plaintiff was a customer of Defendant since around 2016 but is no longer an active customer. However, Defendant continues to retain and store Plaintiff's Personal Information.

17. Defendant Citibank, N.A. is a national banking association organized and existing under the laws of the United States, with a principal place of business located at 388 Greenwich Street, 17th Floor, New York, New York 10013. Defendant conducts substantial business

in this judicial district and throughout the United States, providing financial services including banking and credit services.

## III. JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) as this action involves claims arising under federal statutes, including the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

19. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as these claims arise from the same common nucleus of operative facts as the federal claims and form part of the same case or controversy.

20. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant's principal place of business is located within this district, and a substantial part of the decisions, acts, and omissions giving rise to the claims, including those related to Defendant's data security policies, infrastructure, and breach notification (or lack thereof), occurred or emanated from this district.

## V. FACTUAL ALLEGATIONS

21. At all relevant times, including prior to January 2021, Plaintiff was a paying customer of Defendant Citibank, and his Personal Information was entrusted to and remains stored by Defendant.

22. As a condition of receiving these services, Plaintiff was required to provide, and did provide, his sensitive Personal Information to Defendant. This Personal Information, entrusted to Defendant, included Plaintiff's full name, residential address, Social Security number, date of birth, Citibank account usernames and passwords, email addresses associated with the accounts, and payment information (such as credit card numbers and/or bank account details).

23. Plaintiff's Citibank account password, in particular, was a critical data element intended to secure his account and the wealth of personal data accessible through it.

24. Defendant, in the regular course of its business, collected, stored, transmitted, and had a non-delegable duty to diligently protect Plaintiff's Personal Information from unauthorized access, use, disclosure, or theft, using reasonable and industry-standard security measures. This duty is particularly heightened given the sensitive nature of financial and identifying information entrusted to financial institutions. *See, e.g., In re U.S. Office of Personnel Management Data Security Breach Litigation*, 929 F.3d 1056, 1066 (D.C. Cir. 2019) (discussing duty to protect personal information); *Federal Trade Commission v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015) (affirming FTC's authority to bring enforcement actions for inadequate data security as an unfair practice).

25. Upon information and belief, on or around January 11, 2021, Defendant's computer systems, networks, and databases containing Plaintiff's Personal Information were infiltrated by unauthorized third parties due to Defendant's failure to implement and maintain adequate data security measures (the "Data Breach").

26. As a result, Plaintiff's Personal Information, including his critically sensitive Citibank account password, was stolen and compromised.

27. This unauthorized acquisition of Plaintiff's Personal Information, even without overt misuse to date, constitutes a concrete injury as it directly impairs Plaintiff's privacy and creates an immediate and ongoing risk of identity theft and financial fraud. The mere taking of this information without a permissible purpose is a violation in itself.

28. Defendant knew, or reasonably should have known, of this Data Breach at or near the time it occurred, given the nature of its operations and the detectability of such intrusions through proper monitoring, which Defendant was obligated to perform. *See, e.g., 15 U.S.C. § 45(a)* (prohibiting unfair and deceptive acts or practices in commerce, interpreted by the FTC to include inadequate data security and failure to notify of breaches); *FTC v. LabMD, Inc.*, 88 F. Supp. 3d 1053 (N.D. Ga. 2014) (demonstrating FTC's enforcement of data security obligations).

29. Despite possessing actual or constructive knowledge of the Data Breach, Defendant

intentionally, recklessly, or negligently failed to provide any direct notification to Plaintiff regarding the compromise of his Personal Information for over four years.

30. This failure to notify concealed the Data Breach from Plaintiff and prevented him from taking timely self-help measures to mitigate the resulting harm.

31. Plaintiff remained entirely unaware that his Personal Information, including his Citibank account password, had been compromised in the Data Breach.

32. On or around May 20, 2025, Plaintiff received a notification through a third-party software application on his iPad. This notification alerted him, for the first time, that his Citibank account information, including his password, had been found in a data breach, which Plaintiff reasonably attributes to the January 2021 Data Breach based on available information and the timeline of events.

33. Upon receiving this notification, Plaintiff promptly began to investigate and has since confirmed indications of unauthorized access or attempts to access his email and Citibank accounts, facilitated by the compromised account password.

34. This has caused him significant alarm and distress, and has forced him to expend considerable time and effort securing his accounts and monitoring for fraudulent activity, including purchasing and installing antivirus software for his computer and mobile devices.

35. Defendant's failure to adequately secure Plaintiff's Personal Information, especially his account password, coupled with its prolonged and deceptive failure to notify him of the Data Breach, constitutes a willful, reckless, and/or negligent disregard for Plaintiff's rights, privacy, and financial security.

36. As Plaintiff is no longer an active customer, Defendant's continued and unauthorized retention of his compromised Personal Information underscores Defendant's continuous duty to protect his data, a duty that was severely breached.

## VI. EQUITABLE TOLLING

37. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set

forth herein.

38. Plaintiff is entitled to equitable tolling of any and all applicable statutes of limitations.

39. Defendant actively and fraudulently concealed the Data Breach from Plaintiff by failing to provide any notice thereof, as required by applicable state and federal law (e.g., Michigan's M.C.L. § 445.72, New York's General Business Law § 899-aa), industry best practices, and its duties to Plaintiff. This concealment directly prevented Plaintiff from knowing that his Personal Information had been stolen and that he possessed viable legal claims against Defendant. *See, e.g., In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1342 (N.D. Ga. 2019) (discussing fraudulent concealment in data breach context); *P.H. v. School Dist. of Phila.*, 966 A.2d 1212, 1222 (Pa. Commw. Ct. 2009) (elements of fraudulent concealment under Pennsylvania law).

40. Plaintiff could not, through reasonable diligence, have discovered the Data Breach or the compromise of his Personal Information prior to receiving the third-party notification on or around May 20, 2025, precisely because of Defendant's concealment.

41. Plaintiff has acted with utmost diligence and promptness in bringing these claims upon discovering the Data Breach and the resulting harm.

42. The discovery rule also applies, tolling any applicable statute of limitations until Plaintiff discovered, or reasonably could have discovered through sources other than the concealing Defendant, the injury and its factual basis.

43. Application of any statute of limitations without equitable tolling under these circumstances of fraudulent concealment would unjustly reward Defendant for its wrongdoing and punish Plaintiff for Defendant's deceptive conduct.

## VII. CAUSES OF ACTION

COUNT I: IDENTITY THEFT

(Violation of Federal Law, e.g., Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, and/or Michigan Identity Theft Protection Act, M.C.L. § 445.61 et seq.)

44. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

45. Defendant's failure to secure Plaintiff's Personal Information, including his Social Security number, financial details, and critically his account password (which is expressly defined as "personal identifying information" under Michigan law, M.C.L. § 445.63(n)), and the subsequent unauthorized access to his email and Citibank accounts, constitutes, facilitates, or has directly led to the means for committing identity theft against Plaintiff.

46. As a direct and proximate result of Defendant's conduct, Plaintiff's identity has been stolen or is at significant and imminent risk of being stolen and used for fraudulent purposes, causing him substantial damage, ongoing distress, and financial harm.

COUNT II: BAILMENT
(Michigan Common Law)

47. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

48. Plaintiff entrusted his Personal Information, including his account password, to Defendant for the specific purpose of receiving Defendant's services, with the mutual understanding that Defendant would safeguard this information as a condition of the entrustment.

49. This entrustment created a bailment relationship, whereby Defendant (as bailee) owed Plaintiff (as bailor) a duty to exercise reasonable care in protecting Plaintiff's Personal Information.

50. Defendant breached its duty of care by failing to implement and maintain adequate data security measures, resulting in the Data Breach and the compromise and unauthorized access of Plaintiff's Personal Information, including his password.

51. As a direct and proximate result of Defendant's breach of its duties as a bailee, Plaintiff has suffered damages.

COUNT III: VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MCPA)
(M.C.L. § 445.901 et seq.)

52. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

53. Defendant, in the conduct of its trade or commerce, engaged in unfair, unconscionable, or deceptive methods, acts, or practices prohibited by the MCPA by, *inter alia*: a. Failing to provide reasonable security measures to protect Plaintiff's Personal Information, including his account password, from unauthorized access and theft; b. Misrepresenting, directly or by implication, that it would maintain adequate data security for the information entrusted to it, including by failing to disclose known security vulnerabilities; c. Failing to disclose the Data Breach, which involved sensitive Personal Information such as passwords, in a timely and accurate manner as required by Michigan's data breach notification law (M.C.L. § 445.72) and principles of fair dealing under the MCPA, thereby engaging in deceptive and unfair practices that prevented Plaintiff from mitigating harm.

54. Defendant's conduct was likely to, and did, cause substantial loss and injury to Plaintiff.

55. As a direct and proximate result of Defendant's violations of the MCPA, Plaintiff has suffered actual damages and is entitled to statutory damages, costs, and attorneys' fees where applicable under the Act.

COUNT IV: VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW
(N.Y. Gen. Bus. Law § 349 and § 899-aa)

56. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

57. Defendant engaged in deceptive acts or practices in the conduct of its business, trade, or commerce within the State of New York by, *inter alia*: a. Failing to implement and maintain reasonable safeguards to protect Plaintiff's private information, including his account password and other Personal Information, from unauthorized access and theft. b. Misrepresenting or omitting the material fact that it would adequately secure Plaintiff's Personal Information. c. Failing to provide Plaintiff with timely notification of the Data Breach, despite knowing or having reason to know of the compromise of Plaintiff's private information, in violation of N.Y. General Business Law § 899-aa. This failure to notify constituted a deceptive business practice that prevented Plaintiff from taking steps to protect himself from the consequences of the breach. d. Engaging in conduct that constitutes a violation of N.Y. General Business Law § 349, which prohibits deceptive acts

or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. Defendant's failure to secure Plaintiff's data and its subsequent fraudulent concealment affected consumers in New York and were consumer-oriented.

58. Defendant's deceptive acts and practices were misleading in a material respect, and Plaintiff was injured as a direct result of these deceptive acts or practices.

59. As a direct and proximate result of Defendant's violations of the New York General Business Law, Plaintiff has suffered actual damages and is entitled to statutory damages,and costs.

## COUNT V: INVASION OF PRIVACY
(Michigan Common Law and New York Common Law Principles)

60. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

61. Plaintiff had a reasonable expectation of privacy in his Personal Information entrusted to Defendant, particularly concerning his Social Security number, financial details, account password, and the contents accessible via his Citibank accounts.

62. The unauthorized access to and disclosure of Plaintiff's Personal Information, resulting from Defendant's deficient security and the subsequent Data Breach, and specifically the intrusion into his Citibank accounts facilitated by the stolen password, constitutes an intentional and highly offensive intrusion upon Plaintiff's seclusion and private affairs.

63. Alternatively, or additionally, the compromise and potential uncontrolled dissemination of Plaintiff's private information constitutes a public disclosure of private facts not of legitimate public concern and which would be highly offensive to a reasonable person.

64. As a direct and proximate result of Defendant's actions leading to the invasion of his privacy, Plaintiff has suffered emotional distress, anxiety, and other damages.

## COUNT VI: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED)
(Michigan Common Law and New York Common Law)

65. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

66. Defendant owed Plaintiff a legal duty to exercise reasonable care in safeguarding his

Personal Information, including his account password, and in timely notifying him of any breach that compromised such information.

67. Defendant breached this duty by: (a) failing to implement and maintain adequate data security measures; (b) failing to protect Plaintiff's Personal Information from unauthorized access and theft, thereby allowing the Data Breach to occur; and (c) failing to timely and adequately notify Plaintiff of the Data Breach.

68. It was reasonably foreseeable that Defendant's aforementioned breaches of duty would cause Plaintiff to suffer severe emotional distress upon learning that his sensitive Personal Information, including his account password, was compromised, leading to unauthorized account access and placing him at a high, continuing risk of identity theft and financial fraud, and upon discovering Defendant's prolonged concealment thereof.

69. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered, and continues to suffer, severe emotional distress, anxiety, fear, sleeplessness, and other related significant emotional and physical manifestations.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
(Michigan Common Law and New York Common Law)

70. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

71. Defendant's conduct—specifically its failure to implement adequate security measures despite knowing the profound risks to consumers, its failure to protect highly sensitive data like account passwords, and most egregiously, its intentional, willful, or reckless failure to notify Plaintiff of the Data Breach for over four years, thereby knowingly allowing Plaintiff's Personal Information and account access to be exposed and potentially misused without his knowledge or ability to mitigate—was extreme and outrageous.

72. Defendant knew or acted in reckless disregard of the high probability that its conduct would cause Plaintiff severe emotional distress.

73. Defendant's conduct, particularly its multi-year concealment of a serious data compromise, transcended all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

74. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff

has suffered severe emotional distress.

## COUNT VIII: VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA)
(15 U.S.C. § 1681 et seq.)

75. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

76. Defendant collected and maintained Plaintiff's Personal Information, including data such as Social Security numbers, account passwords (which control access to further PII), and payment history (directly or inferentially available via account access). This information is of the type used in creditworthiness determinations and is frequently targeted for use in identity theft that impacts consumer reports.

77. Defendant, as a custodian of such sensitive consumer information, had a duty under federal law, including principles promulgated by the Federal Trade Commission (FTC) regarding data security and the FCRA, to implement reasonable procedures to protect Plaintiff's information from unauthorized access and misuse.

78. Defendant willfully and/or negligently failed to comply with its duties under the FCRA and associated consumer protection principles by: a. Failing to establish, implement, and maintain reasonable security procedures and practices to protect Plaintiff's Personal Information, including his account password, leading to its unauthorized access and theft in the Data Breach. This failure compromised information vital to Plaintiff's credit identity and financial well-being. b. Acquiring and retaining Plaintiff's Personal Information without a permissible purpose once it was compromised and no longer securely protected. The unauthorized taking of sensitive information without a legitimate need or secure environment violates the core tenets of the FCRA's permissible purpose framework, even if not immediately used for credit reporting. c. Failing to notify Plaintiff of the Data Breach in a timely manner, thereby preventing him from taking appropriate and timely steps to mitigate damage to his credit and protect himself from identity theft, such as placing fraud alerts or credit freezes as contemplated by FCRA protections. d. Failing to offer or provide timely and adequate remedial services, such as identity theft protection and credit monitoring services, which are recognized as essential mitigation measures following breaches of data types intrinsically linked to the FCRA ecosystem and consumer

financial health, contrary to consumer protection principles vigorously enforced by the FTC and the underlying protective purposes of the FCRA. *See, e.g., 15 U.S.C. § 1681b(a)* (permissible purposes of consumer reports); *15 U.S.C. § 1681c-1* (fraud alerts); *15 U.S.C. § 1681c-2* (security freezes); *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161 (D. Kan. 2008) (discussing FCRA duties).

79. As a direct and proximate result of Defendant's willful and/or negligent violations of its duties concerning sensitive consumer information, Plaintiff has suffered actual damages, including but not limited to the imminent and ongoing threat of, and actual experience of, identity theft, potential or actual damage to his creditworthiness, emotional distress, and the significant cost and burden of necessary mitigation efforts.

80. Plaintiff is entitled to actual damages, statutory damages (for willful violations), punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT IX: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (CFAA) (18 U.S.C. § 1030)

81. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

82. Defendant's computer systems, networks, and servers, which stored and processed Plaintiff's Citibank account information and Personal Information (including his password), are "protected computers" within the meaning of the CFAA, 18 U.S.C. § 1030(e)(2), as they are used in or affecting interstate or foreign commerce or communication.

83. As a direct consequence of Defendant's failure to implement and maintain reasonable and adequate security measures, unauthorized third parties intentionally accessed Plaintiff's Citibank accounts and associated data stored on Defendant's protected computers, without authorization, or by exceeding authorized access. This unauthorized access was directly facilitated by the compromise of Plaintiff's account password during the Data Breach.

84. This unauthorized access to Plaintiff's account and the Personal Information contained therein and accessible thereby has directly and proximately caused Plaintiff to suffer "damage" (impairment to the integrity or availability of data, a program, a system, or

information) and "loss" (reasonable costs to any victim) as defined by the CFAA, 18 U.S.C. § 1030(e)(8) and (e)(11).

85. Plaintiff's aggregate "loss" resulting from this unauthorized computer access and conduct fairly traceable to it meets, and upon discovery will be proven to further exceed, the $5,000 statutory threshold for civil actions under 18 U.S.C. § 1030(c)(4)(A)(i)(I). This loss encompasses, without limitation: (a) the substantial and reasonable costs incurred and to be incurred by Plaintiff in responding to the security offense, including the economic value of his considerable time and resources spent assessing the nature and extent of the unauthorized access to his account and data; (b) costs associated with investigating the breach's impact on his personal accounts and restoring their integrity, including but not limited to securing his Citibank accounts, changing numerous passwords across various platforms due to heightened risk, and implementing enhanced personal security measures; (c) costs for necessary credit monitoring and identity theft protection services directly necessitated by the computer intrusion and resulting PII compromise; (d) any revenue lost or other consequential economic damages incurred because of interruption of service or compromise of his account and data; and (e) reasonably anticipated future out-of-pocket expenses directly stemming from this unauthorized computer access and its ongoing consequences, including the purchase of antivirus software for his devices. The calculation of "loss" under the CFAA is broad and can include investigatory costs, remediation expenses, and other costs incurred due to the unauthorized access. *See, e.g., WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 395 (4th Cir. 2012); *A.V. ex rel. F.V. v. iParadigms, LLC*, 544 F. Supp. 2d 473 (E.D. Va. 2008). Furthermore, the FTC and other regulatory agencies often require companies that suffer breaches to provide remedial services, such as credit monitoring, the cost of which can be factored into the CFAA's "loss" calculation, especially when such services are necessitated by the breach annually.

86. As a direct and proximate result of this violation of the CFAA, Plaintiff is entitled to compensatory damages and appropriate equitable relief pursuant to 18 U.S.C. § 1030(g).

COUNT X: FRAUD
(Michigan Common Law and New York Common Law)

14

87. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

88. Defendant made material representations to Plaintiff, both implicitly by offering its services requiring the submission of sensitive PII, and explicitly in its privacy policies, terms of service, and marketing materials (upon information and belief available through discovery), that it would take reasonable and adequate measures to secure Plaintiff's Personal Information, including his account password, and protect it from unauthorized access and theft.

89. These representations were false, as demonstrated by Defendant's inadequate security practices that led to the January 2021 Data Breach and the compromise of Plaintiff's Personal Information.

90. Alternatively, and additionally, Defendant engaged in fraudulent omission and concealment by possessing knowledge of the Data Breach (or by acting in reckless disregard of its occurrence and impact) and thereafter intentionally and knowingly failing to disclose the material facts of the breach and its specific impact on Plaintiff's Personal Information (including his password) for over four years. This concealment was designed to mislead Plaintiff and other customers, induce them to continue entrusting Defendant with their Personal Information, and prevent Plaintiff from taking timely action to protect himself from the consequences of the breach.

91. Defendant knew its representations about its security practices were false when made, or, at a minimum, made them with reckless disregard for their truth or falsity. Regarding the fraudulent concealment, Defendant knew of the Data Breach and its duty to disclose, yet intentionally suppressed this information.

92. Defendant made such misrepresentations or engaged in such concealment with the intention that Plaintiff would rely upon them, continue to entrust Defendant with his Personal Information, and continue to subscribe to and/or allow Defendant to retain his Personal Information for services.

93. Plaintiff reasonably and justifiably relied on Defendant's representations of security and/or was directly harmed by his inability to act due to Defendant's protracted and deceptive concealment. Plaintiff allowed his Personal Information to remain with Defendant,

believing his Personal Information was secure, or at least that Defendant would inform him if it was not.

94. As a direct and proximate result of Defendant's fraud, Plaintiff has suffered significant damages, including but not limited to: the compromise of his Personal Information; unauthorized access to his accounts; costs associated with mitigating current and future identity theft; financial losses; severe emotional distress; and the loss of the benefit of the bargain for services that were not as secure as represented.

## COUNT XI: TRESPASS TO CHATTELS
(Michigan Common Law and New York Common Law)

95. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

96. Plaintiff has a legally protected possessory interest in his Personal Information, including his account password and the data stored within or accessible via his Citibank accounts. This electronic data and the integrity and secure accessibility of his account constitute chattels under Michigan and New York law.

97. Defendant's actions or culpable omissions (including its gross negligence or recklessness in failing to secure its computer systems and Plaintiff's data) intentionally facilitated or directly resulted in unauthorized third parties intermeddling with, accessing, exfiltrating, and potentially altering Plaintiff's Personal Information and his Citibank accounts. This unauthorized access, data theft, and compromise of his account password impaired the condition, quality, utility, and value of Plaintiff's Personal Information and the security and integrity of his Citibank account.

98. This interference was without Plaintiff's consent or authorization and constituted a trespass to his chattels.

99. As a direct and proximate result of this trespass, facilitated by Defendant's misconduct, Plaintiff has suffered damages, including the loss of control and exclusivity over his Personal Information, the cost of remedying the interference (such as securing accounts and data, and purchasing antivirus software), the diminished value and security of his data and account, and associated emotional distress.

## COUNT XII: BREACH OF IMPLIED CONTRACT
(Michigan Common Law and New York Common Law)

100.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

101.    By soliciting, collecting, and storing Plaintiff's sensitive Personal Information (including his name, address, Social Security number, payment information, and account password) as a necessary condition for providing its Citibank services, and by charging Plaintiff for such services, Defendant entered into an implied contract with Plaintiff.

102.    A material term of this implied contract, inherent in the nature of the services provided and the sensitivity of the data entrusted, was that Defendant would employ reasonable and appropriate measures, consistent with industry standards and its own representations, to safeguard Plaintiff's Personal Information and protect it from unauthorized access, disclosure, use, and theft.

103.    Defendant breached this implied contract by, *inter alia*: a. Failing to implement and maintain adequate, industry-standard data security systems, protocols, and practices; b. Failing to adequately protect Plaintiff's Personal Information, including his account password, from unauthorized access and exfiltration; c. Allowing the January 2021 Data Breach to occur due to its deficient security; and d. Failing to provide timely and adequate notice of the breach to Plaintiff.

104.    Plaintiff fulfilled his obligations under the implied contract, including by paying for Defendant's services while he was a customer.

105.    As a direct and proximate result of Defendant's breach of the implied contract, Plaintiff has suffered damages, including but not limited to: the compromise of his Personal Information; costs incurred for credit monitoring, identity theft protection, and other mitigation efforts (including antivirus software); the value of his time spent addressing the consequences of the breach; emotional distress; a diminished value of the services received; and an ongoing, increased risk of future harm.

## COUNT XIII: BREACH OF EXPRESS CONTRACT
(Michigan Common Law and New York Common Law)

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

107.    At the time Plaintiff subscribed to Defendant's Citibank services, and throughout his continuous use of said services, including at the time of the January 2021 Data Breach, a valid and binding contract (the "Service Agreement") existed between Plaintiff and Defendant. This Service Agreement consists of the terms of service, customer agreements, privacy policies, and other related documents provided or made available by Defendant, to which Plaintiff agreed as a condition of receiving services.

108.    The Service Agreement contained express and/or implied terms obligating Defendant to provide services in a competent manner and to take reasonable measures to protect the security, confidentiality, and integrity of Plaintiff's Personal Information, including his account password, collected and stored in connection with the provision of those services. These obligations are also evidenced by Defendant's public representations regarding privacy and data security, which form part of the basis of the bargain.

109.    Defendant breached its contractual obligations under the Service Agreement by, *inter alia*: a. Failing to implement and maintain reasonable and adequate security measures to protect Plaintiff's Personal Information from unauthorized access and theft; b. Specifically failing to protect Plaintiff's account password, thereby enabling unauthorized access to his Citibank accounts and the sensitive data therein; c. Failing to comply with its own privacy policies and other contractual representations concerning data security and consumer data protection; d. Allowing the January 2021 Data Breach to occur as a result of these failures; and e. Failing to provide Plaintiff with timely, truthful, and adequate notification of the Data Breach, which itself constitutes a breach of duties of good faith and fair dealing, if not an explicit contractual notification requirement.

110.    Plaintiff has performed all, or substantially all, of his obligations under the Service Agreement, including by timely paying for Defendant's services while he was a customer.

111.    As a direct and proximate result of Defendant's breaches of the Service Agreement, Plaintiff has suffered substantial damages, including but not limited to: the actual compromise of his Personal Information; financial losses incurred and reasonably anticipated to be incurred in mitigating the effects of the breach (such as costs for credit

monitoring, identity theft restoration services, and securing accounts, including antivirus software); the value of his considerable time spent dealing with the consequences of the breach; a diminution in the value of the Citibank services for which he paid; emotional distress resulting from the breach of trust and exposure of his sensitive information; and the ongoing risk of future identity theft and financial fraud.

COUNT XIV: VIOLATION OF THE TRUTH IN BILLING ACT (OR ANALOGOUS STATE AND FEDERAL CONSUMER PROTECTION STATUTES)
(47 U.S.C. § 264 and/or state equivalents; 15 U.S.C. § 45(a))

112.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

113.    The federal Truth in Billing Act, 47 U.S.C. § 264, and similar state statutes, along with broader consumer protection principles under the Federal Trade Commission Act (15 U.S.C. § 45(a)), mandate that financial service providers engage in fair and transparent billing practices and refrain from deceptive omissions that impact a consumer's financial well-being and their ability to verify charges and service integrity. These acts impose a duty on providers to ensure accuracy and prevent hidden charges or deceptive practices related to service provision. *See, e.g., In re Verizon Wireless Services, LLC, No. C-4416* (FTC Consent Order 2013) (addressing deceptive billing practices); *Sprint Corp. v. FCC*, 315 F.3d 369 (D.C. Cir. 2003) (discussing FCC's authority over billing practices).

114.    Defendant, as a regulated financial service provider, collected and continues to retain Plaintiff's Personal Information. Implicit in Defendant's retention of this information and its past billing practices is a representation that Plaintiff's information is being managed securely and that Defendant has acted in good faith to protect Plaintiff's account and financial information.

115.    Defendant breached its duties under the Truth in Billing Act and analogous consumer protection statutes and principles by, *inter alia*: a. Failing to disclose the material fact of the Data Breach and the compromise of Plaintiff's Personal Information, including his Citibank account password, for over four years. This omission made Plaintiff's account vulnerable to unauthorized access and exploitation, including fraudulent attempts by third parties who obtained his compromised data, thereby affecting his past and future financial

well-being. b. Maintaining silence about the Data Breach, which directly relates to the integrity and security of the "services" that were billed for and the information retained, preventing Plaintiff from making informed decisions about his financial relationships and protecting his financial interests.

116.    As a direct and proximate result of Defendant's violations of the Truth in Billing Act and other consumer protection principles, Plaintiff has suffered actual damages, including financial losses, costs associated with mitigating fraud, and ongoing emotional distress due to the persistent threat to his financial security stemming from these deceptive omissions in service integrity.

COUNT XV: VIOLATION OF PROCEDURAL DUE PROCESS
(U.S. Constitution, Fourteenth Amendment)

117.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

118.    Defendant Citibank, in its capacity as a regulated financial institution entrusted with Plaintiff's sensitive Personal Information, had a state-created or state-sanctioned duty to protect Plaintiff's property interest in his Personal Information and account security. This duty arises from federal and state laws and regulations governing data security for financial institutions, including those related to consumer reporting and privacy.

119.    By failing to notify Plaintiff of the Data Breach for over four years, Defendant deprived Plaintiff of a meaningful opportunity to be heard and to take timely protective measures regarding his compromised Personal Information and financial accounts. This failure constitutes a concrete injury because it denied Plaintiff the procedural safeguard of notification that is essential for him to protect his property interests.

120.    The failure to notify Plaintiff of the breach, particularly when Defendant knew or should have known of the compromise of highly sensitive information, was an arbitrary and unreasonable business practice that deprived Plaintiff of his ability to exercise control over his personal data and mitigate the ensuing harm. This lack of notification denied Plaintiff an adequate pre-deprivation remedy concerning his property interest in the security of his Personal Information and the integrity of his financial accounts.

121.    As a direct and proximate result of Defendant's violation of Plaintiff's procedural due

process rights, Plaintiff has suffered actual damages, including the loss of control over his Personal Information, the inability to mitigate harm, and the ongoing risks of identity theft and financial fraud.

## VIII. DAMAGES

122.    As a direct, proximate, and foreseeable result of Defendant's unlawful actions, omissions, and breaches as set forth in all preceding Counts, Plaintiff has suffered, and will continue to suffer, significant and multifaceted damages, including but not limited to: a. Actual and consequential damages, encompassing the value of his extensive time spent monitoring his financial accounts, credit reports, and online accounts; addressing instances and risks of unauthorized access (including unauthorized access to his Citibank accounts via the compromised password); implementing preventative measures against identity theft (including the purchase of antivirus software); actively securing his digital presence; and the inherent diminished value of his stolen Personal Information. These damages include both current and reasonably anticipated future out-of-pocket expenses and other cognizable economic losses. b. The ongoing and future costs of necessary credit monitoring services, identity theft protection services, and other remedial measures to protect himself from further harm. c. Ascertainable losses resulting from the unauthorized use of his Personal Information and accounts, and economic losses cognizable under the CFAA, including costs of responding to the computer intrusion and unauthorized account access, and the value of fines and penalties imposed for non-compliance with data security regulations by the FTC and other agencies that could have been imposed had Defendant notified Plaintiff. d. Damages flowing directly from Defendant's fraud, trespass to chattels, and breaches of implied and express contracts, including benefit-of-the-bargain losses. e. Significant emotional distress, including anxiety, fear, frustration, humiliation, and a profound sense of violation and vulnerability due to the compromise of his most sensitive Personal Information (including his Social Security number and account password) and Defendant's utter failure to protect it or timely notify him of its theft. f. An ongoing,

substantial, and increased risk of future identity theft, financial fraud, and other misuse of his Personal Information, constituting fairly traceable future damage and concrete injury.

123.    Plaintiff asserts that he is not required to demonstrate itemized out-of-pocket expenses for every category of actual damages suffered to be awarded just compensation for the pervasive harm inflicted by a data breach of this magnitude. Such harm includes intangible injuries like privacy invasion, emotional distress, and the significant, compensable risk of future harm, all of which are recognized consequences. Settlements and awards in analogous data breach cases, including those pursued by entities like the FTC, often address widespread harm without demanding individualized proof of out-of-pocket loss for every single affected consumer.

124.    To impose a stricter, immediate burden of itemized out-of-pocket proof on a Pro Se plaintiff for all damages, particularly when corporate entities (legally treated as "persons") achieve substantial settlements based on the inherent nature and scope of the breach itself, would be discriminatory and a violation of Plaintiff's due process rights to fair and equal treatment under the law. The requested damages are intended to compensate for all such harms, including those for which precise out-of-pocket receipts may not exist at this stage or may not fully capture the entirety of the injury.

125.    Plaintiff seeks actual and compensatory damages in an amount to be proven at trial, but estimated to be not less than $300,000.00 or, in the alternative, not less than $50,000.00.

126.    Defendant's conduct, as alleged herein—including its failure to implement adequate security measures despite knowing the risks, its failure to protect critical data like passwords, its intentional, willful, or reckless disregard for Plaintiff's rights by actively concealing the Data Breach for an extended period, and its overall pattern of misconduct—was malicious, oppressive, and demonstrated a conscious disregard for Plaintiff's rights and safety, thereby warranting the imposition of punitive damages to punish Defendant and deter similar conduct by Defendant and others in the future.

127.    Plaintiff is not required to demonstrate specific out-of-pocket expenses to be eligible for punitive damages, which serve a distinct purpose from compensatory damages.

128.    Plaintiff seeks punitive damages in an amount to be proven at trial, but estimated to be

not less than $10,000,000.00, or, in the alternative, not less than $150,000.00.

## IX. REQUEST FOR LIBERAL CONSTRUCTION

129.    Plaintiff is proceeding Pro Se. As such, Plaintiff respectfully requests that this Court liberally construe his pleadings, holding them to a less stringent standard than formal pleadings drafted by lawyers, in accordance with the well-established principles set forth in cases such as *Haines v. Kerner*, 404 U.S. 519 (1972), and *Erickson v. Pardus*, 551 U.S. 89 (2007).

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Angel Sifuentes III respectfully prays for judgment against Defendant Citibank, N.A. as follows:

A. Awarding Plaintiff actual and compensatory damages in an amount not less than $300,000.00, or, in the alternative, not less than $50,000.00, or as proven at trial;

B. Awarding Plaintiff punitive damages in an amount not less than $10,000,000.00, or, in the alternative, not less than $150,000.00, or as proven at trial;

C. Awarding Plaintiff pre-judgment and post-judgment interest at the maximum legal rate;

D. Awarding Plaintiff costs of this action where applicable by statute (including, under the FCRA, MCPA, CFAA, and applicable contractual provisions or common law principles);

E. Ordering Defendant to provide Plaintiff with comprehensive, lifetime credit monitoring and identity theft protection services, at Defendant's expense;

F. Granting declaratory relief stating that Defendant's practices violated Plaintiff's rights;

G. Granting injunctive relief requiring Defendant to implement and maintain adequate data security measures, subject to court oversight or third-party audit, to prevent future breaches and to safeguard any remaining Plaintiff data; and

H. Granting such other and further relief as this Court deems just, equitable, and proper.

## XI. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 3, 2025

Respectfully submitted,

David Angel Sifuentes III, Pro Se
439 More St. NE, Unit 2
Grand Rapids, MI 49503
616-283-5215
davidsifuentes61@yahoo.com